UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOUNDARY LUBRICATION SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:26-CV-1685-B |
| | § | |
| MAZAK CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Four motions are before the Court. Defendant Mazak Corporation ("Mazak")'s (1) Motion to Transfer Venue to the Eastern District of Kentucky under 28 U.S.C. § 1404(a) (Doc. 15); (2) Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 17); (3) Motion for Leave to File Authenticating Declaration (Doc. 28); and (4) Plaintiff Boundary Lubrication Systems, LLC ("Boundary")'s Motion to Strike or, in the alternative, Motion for Leave to File a Surreply (Doc. 29). For the reasons below, the Court **GRANTS** Mazak's Motion to Transfer Venue (Doc. 15), Motion for Leave to File Authenticating Declaration (Doc. 28), and Boundary's Motion for Leave to File a Surreply (Doc. 29). The Court **DENIES** Mazak's Motion to Dismiss (Doc. 17) as moot. The Clerk of Court is directed to **TRANSFER** this action to the U.S. District Court for the Eastern District of Kentucky.

## I.

## BACKGROUND

This lawsuit arises out of a contract between Boundary and Mazak for repairs to Boundary's specialized three-phased electrical machine, numbered and identified as the "i100BS" (the "Machine"). Doc. 12, Am. Compl., ¶¶ 7-9. The Machine is manufactured by Mazak and used in Boundary's business of producing metal automobile parts. *Id.* Boundary purchased the Machine second-hand from an unnamed third-party in 2020. *Id.* at ¶ 8. In March 2023, a lightning strike caused a power outage at Boundary's production facility causing the Machine to crash. *Id.* at ¶ 10. After attempting self-help remedies, Boundary contacted Mazak to service and repair the Machine. *Id.* at ¶ 12. In July 2023, Mazak's repair technician inspected the Machine and Mazak sent Boundary a sales quote (the "Initial Quote"), seen below, for replacement parts and service. *Id.* at ¶ 13.

Mazak

Mazak Corporation
8025 Production Dr
Dock Door #2
Florence, KY 41042
USA

**Exh. A**

**Sales Quote**
**Quote:** Q0159256
**Expiration Date:** 08/04/23

| Bill To 019227-000000 | | Ship To 019227-000001 | |
|---|---|---|---|
| Boundary Lubrication Systems Llc<br>9573 Cr-2470<br>Royse City, TX 75189<br>USA | | Boundary Lubrication Systems<br>9573 County Road 2470<br>Royse City, TX 75189<br>USA | |
| **Quote Entered** | **Serial Number** | **Customer Contact** | **Sales Taker** |
| 07/05/2023 | 260059 | Travis Rosenbarger | Kerrie Siereveld |

| Item number | Description | Requested Qty | Expected Ship Date | List Price | Discount Price | Extended Amount |
|---|---|---|---|---|---|---|
| Z33HV010142 | PROTECTOR W-AXIS 3-STEP (0A1045P0157)<br>5-7 from YME | 1.00 | 08/05/23 | 6,932.44 | 6,932.44 | 6,932.44 |
| NS_MEAU | NS_MEAU<br>B46000<br>AMP SV MDS-DH2-V1-20 400V | 1.00 | 07/05/23 | 3,162.00 | 3,162.00 | 3,162.00 |

By accepting receipt of product(s), you acknowledge agreement with our Terms and Conditions of Sale, which are incorporated in full by this reference. The Terms and Conditions of Sale are available at https://www.mazakusa.com/mpower-hub/parts-terms-and-conditions/ . Mazak Corporation limits acceptance to the Terms and Conditions of Sale, and objects to any other additional or different terms in the purchaser's purchase order or acceptance.

| | |
|---|---|
| **Parts Total** | **10,094.44** |
| Currency | USD |
| Payment Terms | Net 30 Days |

Relevant to the issues presented is following clause:

> By accepting receipt of product(s), you acknowledge agreement with our Terms and Conditions of Sale, which are incorporated in full by this reference. The Terms and Conditions of Sale are available at https://www.mazakusa.com/mpower hub/parts-terms-and-conditions/. Mazak Corporation limits acceptance to the Terms and Conditions of Sale, and objects to any other additional or different terms in the purchaser's purchase order or acceptance.

Doc. 12-1, Am. Compl., Ex. A.

Both parties dispute where the hyperlink in the sales quote led. Boundary asserts that the link led to a blank webpage. Doc. 20, Pl.'s Resp. Br., 7. While Mazak asserts that the link directed to a webpage on the Mazak website that contained Mazak's Terms and Conditions of Sale (the "Terms and Conditions"). Doc. 24, Def.'s Reply, 7-8. At issue here, Mazak contends that the Terms and Conditions webpage included the following forum-selection clause (the "Kentucky FSC"):

> Any legal action or proceeding arising from or in connection with this agreement or the product shall be brought exclusively in the courts of the Commonwealth of Kentucky or in the U.S. District Court, Eastern District of Kentucky at Covington.

Doc. 16, Def.'s Br., 1-2.

Because the parties agreed to defer the repairs until the Machine stopped functioning completely, Mazak issued an updated sales quote containing the same Terms and Conditions language and URL in October 2023 (the "Subsequent Sales Quote").[1] Doc. 12, Am. Compl., ¶¶ 15-17. After Boundary accepted the Subsequent Sales Quote, Mazak delivered the parts and unsuccessfully attempted to repair the Machine. *See id.* at ¶ 17. Following several more failed repair attempts, Boundary brought suit in Texas state court for damages to the Machine allegedly caused by Mazak's repair attempts. *Id.* at ¶¶ 51-52. Mazak properly removed the action to this Court. *See* Doc. 1, Not. of Removal.

On June 30, 2026, Boundary filed an amended complaint against Mazak, asserting for the first time a breach of contract claim premised on the allegations that "Boundary, acting through Mazak, accepted the Initial Quote and scheduled Mazak to inspect the Machine" which "formed a contract between the parties." Doc. 12, Am. Compl., ¶ 14. On July 14, 2026, Mazak filed a Motion to Transfer Venue to the Eastern District of Kentucky Under 28 U.S.C. § 1404(a), arguing that Boundary is contractually bound by the Kentucky FSC in Mazak's Terms and Conditions that were incorporated into the parties' contract through the Sales Quotes. *See* Doc. 16, Def.'s Br. Boundary vehemently disputes that the Kentucky FSC was incorporated into the contract and is enforceable. *See* Doc. 20, Pl.'s Resp. Br.

---

[1] The parties agree the only difference between the Initial Sales Quote and the subsequent quotes is the expiration dates and the quote numbers. Doc. 20, Pl.'s Resp. Br., 7; Doc. 24, Def.'s Reply, 1. Thus, the Court will accept the fact that the terms and conditions clause, including the hyperlink, are uniform in all Mazak's sales quotes (collectively the "Sales Quotes").

In addition to its Reply, Mazak moved for leave to file an authenticating declaration in support. *See* Doc. 28, Def.'s Mot. for Leave. Boundary moved to strike Mazak's Reply Appendix and portions of Mazak's Reply Brief or, in the alternative, for leave to file a Surreply to respond to the new arguments and evidence. *See* Doc. 29, Pl.'s Mot. to Strike.

First, the Court grants Mazak leave to file its declaration and Boundary leave to file a surreply.[2] Next, the Court concludes that transfer to the Eastern District of Kentucky is proper under § 1404(a). Finally, Mazak's Partial Motion to Dismiss is denied as moot.

A. *Motions for Leave and Strike*

i. Mazak's Motion for Leave is Granted.

After the parties submitted their briefing on the motion to transfer, Mazak moved for leave to file an authenticating declaration in support of its Reply arguments, Doc. 28, Def.'s Mot. for Leave, and Boundary moved to strike new arguments and evidence in Defendant's Reply or, in the alternative, leave to file Surreply, Doc. 29, Pl.'s Mot. to Strike. For the reasons below, the Court grants Mazak's Motion for Leave and grants Boundary's alternative relief of Leave to File Surreply. Accordingly, the Court has considered both the Ching declaration and Boundary's Surreply in deciding the Motion to Transfer.

The Local Civil Rules provide that when an opposed motion is filed, the nonmovant is entitled to file a response and brief, and the movant is permitted to file a reply brief. N.D. Tex. Civ. R. 7.1. "The purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard, and 'to *rebut* the nonmovants' response, thereby persuading the court that

[2] Because the Court concludes that Mazak's Motion for Leave should be granted and Boundary should be granted leave to file Surreply, it has considered both the Ching declaration and Surreply in deciding the Motion to Transfer Venue.

the movant is entitled to the relief requested by the motion.'" *Info–Power Int'l, Inc. v. Coldwater Tech., Inc.*, No. 3:07-CV-0937-P, 2008 WL 5552245, at *8 (N.D. Tex. Dec. 31, 2008) (Solis, J.) (citation omitted). Courts generally will not consider any new arguments or evidence in the reply brief. *Lombardi v. Bank of Am.*, No. 3:13-CV-1464-O, 2014 WL 988541, *3-4 (N.D. Tex. March 13, 2014) (O'Connor, J.). Hence, permitting nonmovants to file surreplies is highly disfavored in this District. *See Robles v Eminent Med. Cen., LLC*, 619 F.Supp.3d 609, 627 (N.D. Tex. 2022) (Lindsay, J.) (permitting filings beyond Local Civil Rule 7.1 only in "exceptional or extraordinary circumstances."). "However, when a movant raises new legal theories or evidence for the first time in its reply, the court may grant leave to file a surreply in order to afford the nonmovant an opportunity to respond." *Zurich Am. Ins. Co. v. Centex Corp.*, 373 F.Supp.3d 692, 695 (N.D. Tex. 2016) (Godbey, J.).

Mazak requests leave to file the declaration of Mina Ching, a records request processor at the Internet Archive, to support its argument that the hyperlinked webpage in the Sales Quotes showed Mazak's Terms and Conditions at the time the Subsequent Sales Quote was issued. Doc. 28, Def.'s Mot. for Leave, 3. Mazak's rationale for the addition of the Ching Declaration in support of its Reply is that it is rebutting Boundary's argument and evidence that the Terms & Conditions Hyperlink led to a blank webpage. *See id.* The Court notes that Mazak put Boundary on notice that it would be submitting the declaration to the Court in its Reply. Because Boundary brought the validity of the Hyperlink into issue in its Response Brief for the first time, the Court finds that there is good cause to grant Mazak's Motion for Leave.

ii. Boundary's Leave to File Surreply is Granted.

Next, the Court considers Boundary's Motion to Strike or for Leave to File Surreply. Boundary requests the Court strike the following parts of Mazak's Reply: (1) the supplement to Nielsen's declaration[3]; (2) the attached Boundary Purchase Order and all arguments that the purchase order constitutes acceptance of the Sales Quote. Doc. 29, Pl.'s Mot. to Strike, 2-3. In the alternative, Boundary requests leave to file a surreply addressing the new issues raised by the purchase order. *Id.* at 3. Boundary's proposed surreply presents arguments made solely in response to new arguments raised by Mazak's Reply. *See* Doc. 29-1, Pl.'s Surreply.

Because Mazak's new arguments and evidence in its Reply concerning the Purchase Order and Hyperlink are responsive to Boundary, the Court denies the Motion to Strike. However, Mazak, in effect, asserts a new legal theory upon which the issue of contract formation turns. Given the novelty of the issues presented and the effect of Mazak's new legal theory, the Court will afford Boundary an opportunity to respond. Accordingly, the Court grants Boundary's Motion for Leave to File a Surreply.

## II.

## LEGAL STANDARD

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

[3] Mazak originally offered the declaration of Patrick Nielsen, a National Service Business Analyst at Mazak, as evidence of the authenticity of the Terms and Conditions webpage at the time in dispute. Doc. 16-1, Def.'s Br., Ex. A. In its Response Brief, Boundary challenged the factual basis for declaration and whether Nielson was employed by Mazak at the time. Doc. 20, Pl.'s Resp. Br., 7. To address Boundary's arguments, Mazak attached a supplementary Nielsen declaration to its Reply clarifying his statements. *See* Doc. 27, Def.'s Supp. App., Ex. 2.

Under the usual § 1404(a) analysis, to determine whether transfer would be convenient and in the interest of justice, courts consider various private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). However, when a § 1404(a) motion is predicated on a forum-selection clause, the "overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' [and] 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citation omitted) (second alteration in original). To properly give controlling weight to the forum-selection clause, the § 1404(a) analysis is adjusted in three ways: (1) the plaintiff's choice of forum is given no weight, (2) the parties' private interests are disregarded, and (3) a transfer of venue does not carry the original venue's choice of law rules. *Id.* at 63-64.

## III.

## ANALYSIS

Before reaching the altered § 1404(a) analysis, courts must determine that four prerequisites are satisfied. *See TM Boyce Feed & Grain v. nVenia, LLC*, 747 F. Supp.3d 951, 961 (N.D. Tex. 2024) (Boyle, J.). First, the movant must demonstrate the existence of a contract which contains a forum-selection clause. *Id.* Second, the claims must be within the scope of the forum-selection clause. *Id.* Third, the forum-selection clause must be mandatory. *Id.* And fourth, the clause must not be unreasonable. *Id.* If each of these prerequisites is satisfied, the Court undertakes the altered § 1404(a) analysis and the nonmovant bears the burden of demonstrating that the four public-interest factors militate against transfer. *Id.* (citing *Atl. Marine Const.*, 571 U.S. at 63-64).

Here, the Parties do not contest the second and third requirements above.[4] Instead, at issue is whether there is a valid contract containing a forum-selection clause and if so, whether the forum-selection clause is reasonable. The Court first determines that the Kentucky FSC was incorporated by reference into the parties' contract. Next, it concludes that the Kentucky FSC is reasonable and enforceable. Then, the Court concludes that, under the altered § 1404(a) analysis, transfer to the Eastern District of Kentucky is warranted.

*A. The Parties' Contract Contains a Forum-Selection Clause.*

The movant bears the burden of establishing the existence of a forum-selection clause in the contract. *TM Boyce Feed & Grain*, 747 F. Supp.3d at 962. Because Mazak removed this case to federal court pursuant to diversity jurisdiction, Texas substantive law applies to the issues of contract formation.[5] *J.D. Fields & Co., Inc. v. U.S. Steel Intern., Inc.*, 426 F. App'x 271, 276 (5th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938)).

Mazak contends that the Terms and Conditions were incorporated by reference into the parties' contract by Boundary's acceptance of the Sales Quotes. Thus, the forum-selection clause mandating venue in Kentucky is part of the contract entered into by Mazak and Boundary.

Boundary responds by arguing that, while it accepted the Sales Quotes to form the contract which is the basis of this action, it did not accept the Terms and Conditions because it did not sign

---

[4] Boundary stipulates that all its claims fall within the Kentucky FSC if the Court concludes that the Kentucky FSC is in the parties' contract. Doc. 20, Pl.'s Resp. Br., 3 n.5. As well, Boundary does not argue that the Kentucky FSC is not mandatory. Thus, the Court will treat both prerequisites to the altered § 1404(a) as satisfied.

[5] Both parties agree that Texas law governs the initial contract formation issues. *See* Doc. 16, Def.'s Br., 5; Doc. 20, Pl.'s Resp. Br., 4. "In evaluating issues of state law, [courts] look to the decisions of the state's highest courts." *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 209-10 (5th Cir. 2018). But "[i]n the absence of a controlling decision, [courts] make an '*Erie* guess' as to how the state's highest court would resolve the issue." *Id.* at 210 (citation and footnote omitted).

the Sales Quotes. Specifically, Boundary asserts it accepted the Sales Quotes *by conduct*, *see* Doc. 12, Am. Compl., ¶ 14, and the doctrine of incorporation under Texas law requires a writing purporting to incorporate another writing to be signed by the parties.

Mazak replies by producing a purchase order form (the "Purchase Order") bearing Boundary's logo and sent by Boundary corresponding to the terms of the Sales Quotes. Doc. 27, Def.'s Supp. App., 2, Ex. 1. It argues that the Purchase Order satisfies the signature requirement for the doctrine of incorporation and that it was the Purchase Order—not Boundary's conduct—which formed the parties' contract whereby Mazak delivered the parts and serviced the Machine.

Boundary argues that the Purchase Order cannot satisfy the signature requirement for two reasons. *See* Doc. 29-1, Pl.'s Surreply. First, it argues that the Purchase Order was sent merely for Boundary's own record keeping and did not operate as an acceptance of the Subsequent Sales Quote because it accepted by conduct. *Id.* at 2. Second, Boundary argues that the Purchase Order does not satisfy the "signature requirement" for incorporation by reference because the Purchase Order does not contain any reference to the Terms and Conditions. *Id.* at 3-4. Both arguments fail.

As to the first argument regarding acceptance, while Boundary does allege in its Amended Complaint that it accepted the Initial Quote by conduct, *see* Doc. 12, Am. Compl. ¶ 14, it also alleges that Boundary decided to not go through with the repairs at that time which led to the issuance of the Subsequent Sales Quote. *Id.* at ¶¶ 15-16. Further, Boundary bases its breach of contract claim on its acceptance of both Sales Quotes, *see id.* at ¶ 62, but its allegations are silent as to how Boundary accepted the Subsequent Sales Quote which led to the delivery of the parts and repair efforts by Mazak. Without more, the Court does not accept Boundary's conclusory allegation that the Purchase Order was issued for Boundary's own record keeping and instead concludes that

it operated as the acceptance of the Subsequent Sales Quote. *See Semiconductor Glob. Sols. v. Capital Asset Exch. & Trading, LLC*, 782 F. Supp. 3d 458, 466 (W.D. Tex. 2025) ("Unlike a Rule 12(b)(3) motion to dismiss for improper venue, the court need not accept as true all allegations in the complaint nor resolve all conflicts in favor of the plaintiff in deciding a § 1404 motion to transfer.") (citing *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam)).

Second, Boundary's argument regarding the signature requirement for incorporation presents a novel issue of Texas law that has not been resolved by the Texas Supreme Court: whether, under Texas law, an unsigned document—here, the Terms and Conditions contained in the unsigned Sales Quotes—can be incorporated by reference into an otherwise enforceable contract.[6] When faced with the same question in *International Corrugated & Packing Supplies, Inc. v. Lear Corp.*, the Fifth Circuit recognized that "[t]he Texas Supreme Court has not had occasion to determine whether a contract that is unsigned but otherwise enforceable may incorporate an unsigned document by reference." 771 F. App'x 545, 547 (5th Cir. 2019). However, the court declined to make an "*Erie* guess" as to how the Texas Supreme Court would answer the novel question because

---

[6] For the purposes of evaluating the formation issues, the Court applies Texas common law rather than Article 2 of the Uniform Commercial Code ("Article 2"). While the contractual relationship of the parties is based on Sales Quotes, a significant portion of the parties' agreement involved Mazak carrying out repairs to the Machine using the parts in the Sales Quotes. Neither party addressed whether Article 2 applies given the sales aspect of the contracts at issue. Rather, both parties treat their contract as for services and thus governed by common law. The Court will accept the parties' interpretation; applying Article 2 would not alter its determinations. *See Composite Advanced Techs., LLC v. Nat'l Heat Treat, LLC*, No. 14-25-00347-CV, 2026 WL 1506471, at *4 (Tex. App.—Houston [14th Dist.] May 28, 2026, no pet.) (holding that Texas' Article 2 Statute does not address incorporation by reference, thus the analysis "does not depend on whether this case is analyzed under the UCC or common law").

the district court had not determined how the parties entered into the agreements at issue in the case. *Id.* at 547-48.

Similarly, in its review of Texas Supreme Court case law post-*International Corrugated & Packing Supplies*, this Court finds that the issue remains unanswered. Absent guidance from the Texas Supreme Court or the Fifth Circuit, the Court must make an "*Erie* guess" as to how the Texas Supreme Court would resolve the novel issue of unsigned incorporation by reference. *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 284 (5th Cir. 2023) ("Courts may make an "*Erie* guess" when there is no decision on point from the state's supreme court regarding that issue[.]"). In making this determination, the Court relies on the Texas Supreme Court's interpretations of the general principles of contract formation as its guideposts. Additionally, the Court looks to the decisions of lower Texas courts for guidance "absent a compelling reason to believe that the [Texas Supreme Court] would reject the lower courts' reasoning." *Hux v. So. Methodist Univ.*, 819 F.3d 776, 780-81 (5th Cir. 2016).

Ultimately, the Court concludes that, based on the facts presented here, the Sales Quotes need not be signed by Boundary for the Terms and Conditions to be incorporated by reference into the contract. Rather, the Terms and Conditions were incorporated by reference through Boundary's issuance of the Purchase Order which operated as an acceptance of the entire Subsequent Sales Quote including the Terms and Conditions incorporated by reference. The Court bases its conclusion on the fact that the Purchase Order corresponded to the major terms of the Subsequent Sales Quote and was issued without Boundary expressing any disagreement to the addition of the Terms and Conditions into the contract.

The Court first examines the historical underpinning of the doctrine of incorporation under Texas law. Next, it articulates the basis for its "*Erie* guess", explaining that this result is consistent with the Supreme Court of Texas' precedents on the general principles of contract. Then, it concludes that this result is also supported by the decisions of Texas lower courts. Finally, it distinguishes the cases that Boundary proffers and responds to Boundary's argument that lack of actual knowledge precludes incorporation.

i. Incorporation by Reference Under Texas Law

"Texas courts have long recognized that, under appropriate circumstances, 'instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other.'" *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (quotations omitted). "Where appropriate, 'a court may determine, as a matter of law,' that multiple separate contracts, documents, and agreements 'were part of a single, unified instrument.'" *Id.* (quotations omitted). "Documents incorporated into a contract by reference become part of that contract." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010).

Boundary contends that an unsigned writing cannot be incorporated into a contract unless the document purporting to incorporate the additional terms is the signed acceptance. Doc. 20, Pl.'s Resp. Br., 6-7 (citing *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). Specifically, Boundary argues that even if it did accept the Subsequent Sales Quote by issuing the Purchase Order, the Terms and Conditions could not be incorporated into the contract because it did not actually sign the Subsequent Sales Quote.

The Texas Supreme Court's decision in *Owen v. Hendricks*, 433 S.W.2d 164 (Tex. 1968), provides the basis for the doctrine of incorporation by reference. At issue in *Owen* was whether two letters could be combined for purposes of satisfying the statute of frauds.[7] *Id.* at 166. The *Owen* court held that "an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged . . . provided that the document signed by the defendant plainly refers to another writing." *Id.*

Boundary contends that *Owen* establishes that, under Texas law, an unsigned writing cannot be incorporated into a contract unless the document purporting to incorporate the additional terms is the signed acceptance. Doc. 20, Pl.'s Resp. Br., 6-7. Applying this reading of *Owen*, Plaintiff asserts that because it accepted the Sales Quotes "by conduct" rather than signed writing, the Terms and Conditions—which the unsigned Sales Quotes references—were not incorporated into the contract. Doc. 29-1, Pl.'s Surreply, 2. Then, in response to Mazak's argument that the Purchase Order constituted acceptance of the entire Subsequent Sales Quote, Boundary argues that the Purchase Order cannot incorporate by reference because the form itself—unlike the Sales Quotes—does not reference the Terms and Conditions clause. *Id.*

As an initial matter, the Court concludes that Plaintiff's reading of *Owen* is erroneous. It is important to interpret the *Owen* court's language in context. The *Owen* court was specifically addressing whether a document could be incorporated by reference to satisfy the requirement under the Statute of Frauds that certain contracts be "in writing and *signed* by the person to be charged[.]"

[7] The *Owen* court was interpreting a Texas statute codifying the Statute of Frauds at the time. The relevant statutory language at the time stated: "Section 28 of Article 6573a provides that no action shall be brought for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement upon which the action is brought, or some memorandum thereof, shall be in writing and *signed by the person to be charged* or his lawfully authorized agent." *Id.* at 166 (emphasis added).

*Owen*, 433 S.W.3d at 166. Thus, the best reading of *Owen* is that its reference to a signature requirement was intended to address the specific Statute of Frauds requirement at issue in that case—rather than intended to create a categorical requirement for all incorporation cases, even when the statute of frauds is plainly inapplicable. Specifically, the Court finds that *Owen* does not preclude finding that an acceptance of an offer, which expressly states that acceptance will incorporate by reference additional terms, may be read together as a "single, unified instrument" incorporating the additional terms into the parties' contract. *See Rieder*, 603 S.W.3d at 94.

Fifth Circuit case law supports this Court's reading of *Owen*. The Fifth Circuit has explicitly acknowledged that *Owen* "discuss[ed] the doctrine of incorporation by reference *for purposes of the statute of frauds.*" *Nat'l Presort Servs., Inc. v. ACS State & Local Sol., Inc.*, 176 F. App'x 543, 548 n.13 (5th Cir. 2006) (emphasis added). Moreover, the Fifth Circuit recently stated post-*Owen* that "the Texas Supreme Court has not had occasion to determine whether a contract that is unsigned but otherwise enforceable may incorporate an unsigned document by reference," and declined to resolve this novel issue because the district court had not determined whether the agreements were entered into by purchase orders, oral means, or by other conduct. *International Corrugated & Packing Supplies*, 771 F. App'x at 547-48. Thus, the *International Corrugated & Packing Supplies* court acknowledged that *Owen* does not govern cases like this one where the contract is predicated on unsigned writings..[8]

Therefore, because *Owen* is not dispositive, the Court turns to the principles of contract as espoused by the Texas Supreme Court for guidance in making its "*Erie* guess."

---

[8] While Boundary asserts it accepted the Sales Quotes by conduct, it makes no argument or allegation that the parties negotiated or agreed to any terms outside of the Sales Quotes.

ii. The Terms and Conditions were Incorporated by Reference Under Principles of Texas Contract Law.

"Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *3 (N.D. Tex. Oct. 2, 2019) (Scholer, J.) (citing *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018)). Unless explicitly required, the absence of a party's signature does not render an otherwise valid contract unenforceable. *See Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010) ("Texas law recognizes that a contract need not be signed to be "executed" unless the parties explicitly require signatures as a condition of mutual assent."); *Wright v. Hernandez*, 469 S.W.3d 744, 757 (Tex. App.—El Paso 2015, no pet.) ("[T]he absence of a party's signature does not necessarily destroy an otherwise valid contract and is not dispositive of the question of whether the parties intended to be bound by the terms of a contract."). Rather, "contracts require mutual assent to be enforceable." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).

"Texas strongly favors parties' freedom of contract." *Gym-N-I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 912 (Tex. 2007). The Texas Supreme Court has "repeatedly reaffirmed that competent parties 'shall have the utmost liberty of contract, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice.'" *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) (quotations omitted). "This 'paramount public policy' mandates that courts 'are not lightly to interfere with this freedom of contract.'" *Id.* (quotations omitted). "Absent compelling reasons, courts must respect and enforce the terms of a contract the

parties have freely and voluntarily entered." *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 471 (Tex. 2016).

Before delving into the merits of the formation issues presented here, the Court finds it instructive to note the undisputed facts as to the parties' dealings. Both parties agree that they entered into a binding contract for services.[9] As well, both agree that the Sales Quotes issued by Mazak were definitive enough to constitute offers and that Boundary's acceptance of the Sales Quotes formed the parties' contract. Finally, both agree that there were no oral agreements outside of the Sales Quotes that form the basis for the contract.

As the Court previously concluded, Boundary accepted the Subsequent Sales Quote by issuing the Purchase Order. It is also undisputed that, after the contract was formed from the Subsequent Sales Quote, Boundary accepted the parts identified by the Subsequent Sales Quote and Mazak undertook efforts to repair the Machine. Further, Boundary makes no argument that it ever objected to the incorporation of the Terms and Conditions even though its founder admits to knowing of their existence around the time of the issuance of the Purchase Order. Doc. 21-1, Pl.'s App., Ex. 1, 3. Importantly, Boundary does not contend that the Purchase Order operated as a counteroffer to the Subsequent Sales Quote. Thus, taking Boundary's position as true, it must have accepted all material terms of the Subsequent Sales Quote.

Boundary nonetheless argues that the Purchase Order's silence as to the incorporation of the Terms and Conditions precludes their incorporation. This is not supported by Texas law. An acceptance of a sales quote that is definitive enough to qualify as an offer need not specifically refer to every term in the sales quote. *See Tecore, Inc. v. AirWalk Communications, Inc.*, 418 S.W.3d 374,

---

[9] Mazak agrees there was a binding written contract between the parties only for purposes of the Motion to Transfer Venue. Doc. 16, Def.'s Br., 1 n. 2.

385 (Tex. App.—Dallas 2013, pet. denied) (holding that a purchase order that did not reference Terms and Conditions contained in a sales quote operated as acceptance of the sales quote and was not a counteroffer).

Further, Texas law provides that "an acceptance may not change or qualify the material terms of the offer, and an attempt to do so results in a counteroffer rather than acceptance." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 513–14 (Tex. 2014). And nothing in the Purchase Order expresses any indication that Boundary intended to change or qualify the incorporation of the Terms and Conditions into the contract. Thus, by sending the Purchase Order to Mazak without expressing any objection to the incorporation of the Terms and Conditions into the contract, Boundary assented to all provisions of the Subsequent Sales Quote including the Terms and Conditions incorporated by reference.

It is clear that Boundary's intent was to accept the Subsequent Sales Quote by sending the Purchase Order form and its omission of a reference to the Terms and Condition does not alter the analysis. *See Amedisys*, 437 S.W.3d at 517 ("[W]e cannot conclude that the slight variation in language from [the defendant's] offer to [the plaintiff's] acceptance is sufficient, on its face, to convert [the plaintiff's] purported acceptance into a counteroffer. The uncontroverted evidence demonstrates that [the plaintiff] intended to accept [defendant's] offer, did not intend to make a counteroffer, and did not intend that the settlement be dependent on any alteration of the offer's terms."). Further, Boundary does not dispute that it accepted the products described in the Subsequent Sales Quote as required by the incorporating language.

Therefore, the Court concludes that Boundary's Purchase Order may be read together with the Sales Quote as to incorporate the Terms and Conditions hyperlinked in the Subsequent Sales Quote—and thus the Kentucky FSC—into the parties' contract. *See Rieder*, 603 S.W.3d at 94.

Any other result would contravene Texas' strong policy interest in the freedom of contract by allowing Boundary to claim that a contract exists and sue Mazak for breach while simultaneously evading terms in the same contract that are undesirable to Boundary. *Camino Real Devs., LLC v. RivenRock, LLC*, No. 25-BC08B-0015, 2026 WL 1362457, at *7 (Tex. Bus. Ct. May 15, 2026) ("A party cannot claim the benefits of a contract while simultaneously disclaiming the obligations attached to those rights."). Texas law does not compel this illogical result. *Cf. In re Weekley Homes, L.P.*, 180 S.W.3d 127, 135 (Tex. 2005) ("A nonparty cannot both have his contract and defeat it too."); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527 (Tex. 2015) ("The claimant cannot 'have it both ways'; it cannot, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" (citation omitted)).

Further, the Court's *Erie* guess is supported by a Texas appellate court's recent holding in *Composite Advanced Technologies, LLC v. Nat'l Heat Treat, LLC*, No. 14-25-00347-CV, 2026 WL 1506471 (Tex. App.—Houston [14th Dist.] May 28, 2026, no pet.).

In *Composite Advanced Technologies*, the parties disputed whether a statement of limited liability was incorporated by reference into the parties' contract. 2026 WL 1506471, at *2. The defendant, upon plaintiff's request, sent a sales quote describing the work, price, and a link to the defendant's statement of limited liability below a provision stating "all work is performed subject to

[defendant's] Statement of Limited Liability. *Id.* No agent or representative is authorized to alter [defendant's] Statement of Limited Liability, except in writing duly signed and dated by an authorized executive officer of National Heat Treat. A link to the [defendant's] Statement can be found here." *Id.* at *1. In response to the quote, the plaintiff sent a purchase order that corresponded to the quoted terms but omitted any reference to the statement of limited liability. *Id.* Between the time of the quote being issued and the purchase order acceptance, the plaintiff did not object to the incorporation of the limited liability statement into the contract. *Id.*

The *Composite Advanced Technologies* court held that the quote issued by the defendant was definitive enough to constitute an offer and the plaintiff's purchase order operated as an acceptance of the quote including the limited liability statement incorporated by reference. *Id.* at *4. The court reasoned that Texas law does not require a purchase order to specifically reference the terms and conditions of the offer for terms to be incorporated by reference into the contract. *Id.* Rather the plaintiff had a duty to read the terms of the offer it was accepting when it issued the purchase order. *Id.*

The Court finds the *Composite Advanced Technologies* reasoning to be persuasive and a strong indicator of what the Texas Supreme Court would do if faced with the same facts. *See Ironshore Eur. DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 764 (5th Cir. 2019) (noting that federal courts sitting in diversity "typically 'treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning.'" (citations omitted)). Given the Texas Supreme Court's consistent rulings supporting freedom of contract, the Court has no reason to find that the Texas Supreme Court would reject the *Composite Advanced Technologies* holding.

Other Texas courts' holdings in the context of internet contracts provide further support for this Court's conclusion. Courts have held that hyperlinked terms and conditions can be incorporated by reference into a contract under Texas law. *See, e.g.*, *HomeAdvisors, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565 (Tex. App.—Dallas June 4, 2020, no pet.); *Brown v. Federated Cap. Corp.*, 991 F.Supp.2d 857, 861 (S.D. Tex. 2014). In *HomeAdvisors*, the plaintiffs sued the defendants for breach of contract, among other claims, and the defendant moved to compel arbitration. 2020 WL 2988565, at *2. The defendant argued that when plaintiffs submitted their requests for service on its website, they agreed to the defendant's terms and conditions that were hyperlinked on the webpage with the statement that "by submitting this request, you are agreeing to our Terms & Conditions." *Id.* The plaintiffs admitted to submitting requests on the defendant's webpage while arguing that the terms and conditions were not a part of the contract. *Id.* at *4. The *HomeAdvisors* court concluded that a valid agreement to arbitrate existed because the plaintiffs' assent to the terms and service was unambiguous and it was clear that the plaintiffs were accepting the terms prior to its acceptance. *Id.*

Albeit in different contexts, the principles of *HomeAdvisors* support the incorporation of the Terms and Conditions into the parties' contract here. *HomeAdvisors* made no reference to the need for a signed writing for the hyperlinked terms and conditions to be incorporated by reference into the parties' contract. *See id.* Rather, it was the manifestation of assent that controlled the incorporation. *See id.* Similarly, here, Boundary manifested assent to the Subsequent Sales Quote by issuing its Purchase Order even if it did not sign the Quote itself.

iii. P's cases distinguishable;

Next, the cases that Boundary relies on to support its signature argument do not compel a different result. *See TM Boyce Feed & Grain, LLC v. nVenia, LLC*, 747 F.Supp.3d 951 (N.D. Tex. 2024) (Boyle, J.); *Bob Montgomery Chevrolet, Inc. v. Dent Zone Companies*, 409 S.W.3d 181 (Tex. App.—Dallas 2013, no pet.); *In re Mattr*, 731 S.W.3d 715 (Tex. App.—Eastland 2026, no pet.); *Jones v. Homeaglow Inc.*, No. 3:25-CV-00249-S, 2025 WL 2816792 (N.D. Tex. Oct. 1, 2025) (McKay, M.J.). While each case involved the court interpreting whether a forum-selection clause was a part of the parties' contract, the factual circumstances of the parties' contract negotiations and the express language of the purported agreements render each case distinguishable.

This Court in *TM Boyce* concluded that a sales quote issued by the defendant which contained a forum-selection clause did not become part of the parties' contract. 747 F. Supp. at 964. But this Court's previous decision does not dictate its determination here. Central to this Court's holding in *TM Boyce* was the fact that the sales quote was not an offer of which plaintiff's "assent alone w[ould] consummate the contract." *Id.* at 963. Specifically, the language in the sales quote expressly stated that the quote did not bind the plaintiff. *Id.* In contrast, the Sales Quotes here did not contain any non-binding language and instead informed Boundary that its acceptance would manifest assent to all terms in the Sales Quotes including the terms incorporated by reference.

Similarly, *In re Mattr* does not provide support for Boundary's position. There, the court rejected the argument that terms and conditions were incorporated into the parties' contract because there, signature of the order acknowledgment was a condition of being bound. 731 S.W.3d at 722. The order acknowledgments at issue stated that "[b]y signing below, I acknowledge the above order information is accurate; I agree the sales order is subject to [the] terms and conditions[.]" *Id.* The

court concluded that, under Texas law, an agreement is unenforceable when the terms of the contract make clear that the party's signature is required to make it binding. *Id.* As this Court has already noted, the Sales Quotes do not contain any language conditioning assent on Boundary's signature. Rather, each Quote expressly stated that acceptance would be the binding manifestation of assent to the Terms and Conditions. Thus, the *In re Matter* court's decision is inapplicable to the present case.

As well, *Bob Montgomery Chevrolet* is equally inapplicable because in that case the language purporting to incorporate by reference failed to indicate the terms would be binding. 409 S.W.3d at 193. The *Bob Montgomery Chevrolet* court concluded that the purported incorporating language that "additional benefits, qualifications, and details . . . are available for your review at our website" indicated that the terms and conditions were merely supposed to be informative rather than contractually binding. *Id.* Here, Boundary makes no argument that the incorporating language in the Sales Quotes indicated that it was merely intended to be informative rather than binding.

Finally, *Homeaglow* is distinguishable because the plaintiff presented evidence that she never entered into the contract containing the forum-selection clause. 2025 WL 28116792, at *6. In *Homeaglow*, the defendant moved to compel arbitration arguing that the plaintiff had agreed to its terms and conditions when she signed up for the defendant's website. *Id.* at *1-2. But the defendant was unable to demonstrate that the plaintiff assented to the online terms containing the arbitration provision because nothing indicated that signing up for the website required assent to the terms and conditions. *Id.* at *7-8. As the Court has explained at length, the incorporating language in the Sales Quotes here was not merely instructive, thus *Homeaglow* is likewise inapplicable.

Therefore, Boundary does not point to any previous decision that would support its argument that a signature was required on the Sales Quotes for the Terms and Conditions to be incorporated into the valid contract that Boundary is suing upon. Further, Boundary provides no argument to differentiate the cases raised by Mazak that support this Court's determination. Accordingly, for the reasons stated above, the Court concludes that a binding contract containing the Kentucky FSC was formed by Boundary's issuance of the Purchase Order.

iv. The Kentucky FSC is Enforceable Regardless of Boundary's Subjective Knowledge.

Having concluded that the Kentucky FSC could be incorporated by reference into the contract, the Court next addresses whether Boundary's lack of actual knowledge precludes its incorporation. Doc. 29-1, Pl.'s Surreply, 5-7. In support of its lack of knowledge, Boundary offers the declaration of Travis Rosenbarger, the director and founder of Boundary. Doc. 21-1, Pl.'s App., Ex. 1, ¶ 3. Rosenbarger stated that, around the time Boundary issued the Purchase Order, he clicked on the link provided in the Subsequent Sales Quote and it led to a blank webpage without any terms or conditions available. *Id.* at ¶ 6. "At that time Boundary elected to proceed with the purchase of the parts listed on the October Quote." *Id.* at ¶ 7.

In opposition to Rosenbarger's declaration, Mazak contends that the hyperlink was not broken at the time that the Sales Orders were issued. *See* Doc. 24, Def.'s Reply. In support of its argument, Mazak offers the declaration of its National Service Business Analyst and a web-capture of what the hyperlink showed through the Wayback Machine[10]. Doc. 27, Def.'s Supp. App., Ex. B, 3-4; Doc. 28-1, Def.'s Mot. for Leave, Ex. A. Additionally, Mazak proffers the declaration of Mina

[10] "The Wayback Machine is an online digital archive of web pages. It is run by the Internet Archive, a nonprofit library in San Fransico, California." *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 581 n.1 (5th Cir. 2022) (quotation omitted).

Ching, a records request processor at the Internet Archive, attesting to the authenticity of the Terms and Conditions webpage containing the Kentucky FSC. Doc. 28-1, Def.'s Mot. for Leave, Ex. 1.

Because Mazak has produced properly authenticated evidence that the hyperlink contained in the Sales Quotes directed to the Terms and Conditions on Mazak's website at the time, the Court finds that the Terms and Conditions were sufficiently identified. The Court will also accept Rosenbarger's declaration for the proposition that Boundary did not have actual knowledge of the Terms and Conditions for the purposes of the Motion. In any event, Rosenbarger's declaration does not alter the Court's holding as it is well-settled that "simply being unaware of a forum-selection clause does not make it invalid."[11] *In re Intern. Profits Assoc., Inc.* 286 S.W.3d 921, 923 (Tex. 2009). Boundary was on notice that Mazak's Terms and Conditions existed prior to its acceptance of the Sales Quotes through the inconspicuous print and hyperlink included on the Sales Quotes. Further, Rosenbarger's declaration establishes that Boundary knew of the existence of a webpage containing Mazak's Terms and Conditions, even if there was no actual knowledge of the terms, prior to its acceptance of the Subsequent Sales Quote. *See Sierra Frac Sand, LLC v. CDE Glob. Ltd.*, 960 F.3d 200, 205 (5th Cir. 2020). Boundary's failure to inquire or request a copy of Mazak's Terms and Conditions does not preclude the Court from finding that a valid forum-selection clause existed.

For the reasons stated above, the Court finds that the Kentucky FSC contained in Mazak's Terms and Conditions was incorporated into the parties' contract.

---

[11] In support of its argument that actual knowledge of the incorporated terms is required, Boundary cited to *One Beacon Ins. Co. v. Crowley Maritime Servs., Inc.*, 648 F.3d 258 (5th Cir. 2011). But Boundary's reliance is misplaced. The *One Beacon* court held that "notice of incorporated terms is reasonable where, under the particular facts of the case, '[a] reasonably prudent person should have seen' them." *Id.* at 268 (alteration in original) (citation omitted). Because Boundary provides no other support for its actual knowledge standard, the Court concludes that it is not required.

*B. The Kentucky FSC is Enforceable.*

Next, Boundary asserts that if the Kentucky FSC was a part of the parties' contract, it is unenforceable due to Mazak intentionally hiding its existence. Doc. 20, Pl.'s Resp. Br., 9. The Court disagrees; the Kentucky FSC is enforceable.

Federal law governs the enforceability of the Kentucky FSC. *Noble House, LLC v. Certain Underwriters at Lloyd's, London*, 67 F.4th 243, 249 (5th Cir. 2023). In this Circuit, courts apply a "strong presumption in favor of the enforcement of mandatory FSCs." *Weber v. PACT XPP Technologies,* AG, 811 F.3d 758, 773 (5th Cir. 2016) (citation omitted).

> The presumption of enforceability may be overcome, however, by a *clear showing* that the clause is 'unreasonable' under the circumstances. Unreasonableness potentially exists where (1) the incorporation of the [FSC] into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the [FSC] would contravene a strong public policy of the forum state.

*Id.* (emphasis added).

"Arguments that go to the validity of the contract as a whole do not prevent enforcement of an FSC; instead, the party seeking to avoid enforcement must demonstrate that the FSC is invalid rather than merely claim the contract is invalid." *Id.* (citation omitted). "In effect, the court is to treat the FSC as both severable and presumptively valid." *Id.*

Here, Boundary advances two theories for overreaching. First, it argues that because the Terms and Conditions were not contained in the four corners of the document and span seven pages, Mazak "intentionally obfuscate[d] what its parts contract include[d]" and tried to hide the additional terms "in plain sight." Doc. 20, Pl.'s Resp. Br., 11-12. The Court finds the argument meritless. The mere fact that the Kentucky FSC was incorporated by reference does not overcome

the presumption of validity to render the clause unenforceable. As well, Boundary's argument that the Kentucky FSC was intentionally hidden fails. Upon review of the Terms and Conditions, the Court notes that the Kentucky FSC is clearly identified in the Terms and Conditions and written in all capital letters. Doc. 16, Def.'s Br., Ex. 1, 5. Therefore, Boundary's first theory for unenforceability fails.

Second, Boundary argues that because no act was needed to manifest intent to be bound by the additional terms or direct the consumer to read the terms, the Kentucky FSC was the product of overreaching. Doc. 20, Pl.'s Resp. Br., 12-13. As to Boundary's first point that no act was needed to manifest intent to be bound, it fails under Fifth Circuit precedent because Boundary is essentially attempting to relitigate whether the Kentucky FSC became part of the contract. *See Weber*, 811 F.3d at 773 ("Arguments that go to the validity of the contract as a whole do not prevent enforcement of an FSC[.]"). The Court has already found Boundary agreed to be bound by the Kentucky FSC and will not relitigate the same argument of acceptance as to enforceability. Further, contrary to Boundary's argument, the Sales Quotes do direct the offeree to read the Terms and Conditions. Doc. 12, Am. Compl., Ex. A, Ex. B. The incorporating language states where the Terms and Conditions "are available" for their review through the hyperlink. *Id.* The fact that the text was slightly smaller than the remaining text on the Sales Quotes does not, in turn, make the Kentucky FSC unenforceable.

For the reasons stated above, the Court finds that Boundary fails to overcome the presumption of enforceability. Therefore, the Court holds that the Kentucky FSC is enforceable.

*C. The Altered § 1404 Analysis*

Finally, because the Kentucky FSC is both mandatory and enforceable, Boundary bears the burden of showing that public-interest factors "overwhelmingly disfavor a transfer." *Atl. Marine Const. Co.*, 571 U.S. at 67. Boundary does not present any argument that the factors disfavor transfer; therefore, the Court concludes that the public-interest factors do not overcome the mandatory Kentucky FSC. Accordingly, the Court determines that Mazak has demonstrated good cause that transfer to the United States District Court for the Eastern District of Kentucky is proper. *See* 28 U.S.C. § 1404(a).

## IV

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant Mazak's Motion to Transfer Venue (Doc. 15). This action is hereby **TRANSFERRED** to the United States District Court for the Eastern District of Kentucky. As a result, Defendant Mazak's Partial Motion to Dismiss is **DENIED as moot** (Doc. 17).

**SO ORDERED.**

**SIGNED: November 17, 2026.**

___________________________________
**JANE J. BOYLE**
**SENIOR UNITED STATES DISTRICT JUDGE**